O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON HENDERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a public entity, OFFICER SORIANO, OFFICER MUNOZ, and DOE OFFICERS 1 to 10,<br><br>Defendants. | Case No.: 2:24-cv-10938-MEMF-E<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT NO. 20]** |

Before the Court is the Motion for Partial Summary Judgment filed by Plaintiff Brandon Henderson. Dkt. No. 20. For the reasons that follow, the Court DENIES Plaintiff's Partial Motion for Summary Judgment.

/ / /

/ / /

1

## BACKGROUND

### I.     Factual Background

On the night of August 29, 2024, Brandon Henderson and Zion Turner were walking together westbound on the south side of Hollywood Boulevard, just west of Whitley Avenue, to go to Ignite Smoke Shop. Henderson was wearing a blue sweatshirt and Turner was wearing a white and brown flannel jacket. Officers Munoz and Soriano (collectively, "the Officers") were on patrol in their car on Hollywood Boulevard that night, with Munoz driving and Soriano in the passenger seat. Officers Munoz and Soriano allege that they both observed Henderson holding and passing an open twenty-four-ounce beer can to Turner while they were walking on Hollywood Boulevard towards the Smoke Shop. The parties dispute whether Henderson held a beer can before the Officers' Digital in Car Video ("DICV") started recording. The Officers eventually detained both Henderson and Turner for possessing an open alcoholic container in public, and then subsequently arrested Henderson for resisting arrest.

Henderson alleges that Officers Munoz, Soriano, and the City of Los Angeles, through Munoz's and Soriano's actions, violated his civil rights when Officers Munoz and Soriano detained him without reasonable suspicion of him holding a beer. Defendants deny all allegations and assert that the Officers' actions were lawful because there was reasonable suspicion that Henderson was holding a beer.

### II.     Procedural History

On December 19, 2024, Plaintiff Brandon Henderson filed a complaint in the Central District of California against Defendants City of Los Angeles and Los Angeles City Police Department ("LAPD") Officers Munoz, Soriano, and DOE Officers 1-10 (collectively, "Defendants"). Dkt. No. 1. Plaintiff's complaint alleges five (5) causes of action: (1) unreasonable search and seizure, 42 U.S.C. § 1983; (2) false and malicious investigation and prosecution, 42 U.S.C. § 1983; (3) negligence; (4) false arrest / imprisonment; and (5) violation of the Bane Act, Cal. Civ. Code Section 52.1. *See* Dkt. No. 1. On September 23, 2025, Plaintiff filed the instant, fully integrated Motion for Partial Summary Judgment, which includes Defendants' Opposition and Plaintiffs' reply to Defendants' opposition. Dkt. No. 20 ("Motion"). The parties also filed joint statements of

undisputed and disputed facts. Dkt. Nos. 20-1 to -2. On December 4, 2025, the parties filed a Joint Supplemental Briefing. Dkt. No. 21. On December 11, 2025, the Court held a hearing on the Motion.

III.     **Applicable Law**

       **A.  Motion for Summary Judgment**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case. *Id.*

Where a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. In such cases, the nonmoving party may defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a moving party carries its burden of production, the burden shifts to the nonmoving party to produce evidence showing a genuine dispute of material fact for trial. *Anderson*, 477 U.S. at 248–49. Under these circumstances, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). If the nonmoving party fails to produce enough evidence to create a

genuine issue of material fact, the motion for summary judgment shall be granted. *Id.* at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." FED. R. CIV. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." Anderson, 477 U.S. at 252.

To carry its ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no genuine issue of material fact for trial. *Nissan Fire*, 210 F.3d at 1102; *Celotex Corp.*, 477 U.S. at 323.

### B.  42 U.S.C. § 1983

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983 ("Section 1983").

## IV.    Findings of Fact[1]

The Court finds that the following material facts are established for trial under Fed. R. Civ. P. 56(a) and Fed. R. Civ. P. 56(g).

On the night of August 29, 2024, Brandon Henderson and Zion Turner were walking together westbound on the south side of Hollywood Boulevard, just west of Whitley Avenue, to go to Ignite Smoke Shop. *See* JAF ¶¶ 1, 14-16. Henderson was wearing a blue sweatshirt and Turner was wearing a white and brown flannel jacket. *Id.* ¶¶ 14, 16.

Officers Munoz and Soriano, acting under color of law, were on patrol in their car for the LAPD on Hollywood Boulevard that night, with Munoz driving and Soriano in the passenger seat. *Id.* ¶¶ 2-4. Both officers were equipped with body-worn video ("BWV"), and their patrol vehicle was also equipped with a digital in-car video ("DICV"). *Id.* ¶¶ 5, 9. The DICV started recording at 22:13:54. *Id.* ¶ 11. As Henderson and Turner were walking westbound on Hollywood Boulevard from Whitley Avenue, the Officers were driving eastbound on Hollywood Boulevard toward the red light at Whitley Avenue. *Id.* ¶ 23.

At 22:13:54 to 22:14:00, the DICV captured Henderson and Turner walking westbound at the Officers' one-to-two o'clock position (where twelve o'clock is the red light at Whitley, and three o'clock would be directly outside the Officers' passenger window). *Id.* ¶ 24. While walking, Turner was holding a twenty-four-ounce silver can of beer. *Id.* ¶¶ 17, 22. The Officers did not see Henderson drinking the beer or showing any signs of inebriation. *Id.* ¶¶ 19-21. Henderson was not

---

[1] The facts set forth below are taken from the parties' respective Joint Appendix of Facts. Dkt. Nos. 20-1, 20-2 ("JAF"). To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion. To the extent that any of the facts set below were allegedly disputed, the Court concludes that no actual dispute exists or that the adopted language resolves the dispute.

In making these Findings of Fact, the Court considered both parties' various Evidentiary Objections. Dkt. Nos. 20-1, 20-2. The Court did not find any evidence objected to essential to finding any fact stated herein, and therefore need not reach the Evidentiary Objections.

At the hearing, defense counsel raised the concern that the Court's findings might limit the Officers' ability to testify to these facts at trial. The parties are advised that the Findings of Fact are not intended to limit the Officers' ability to testify to these facts at trial. The scope of the Officers' testimony will be addressed in motions in limine or at the final pretrial conference.

seen in the DICV video holding a beer can. *See* Ex. C at 0:00-0:05; Soriano Dep. 13:23-14:24, 52:24-53:8, 54:8-17, Dkt. No. 20-9.

Upon the Officers seeing Henderson and Turner at their one-to-two o'clock position, the Officers conducted a U-turn to catch up to them and initiate detention of Henderson and Turner. JAF ¶ 25. The Officers stopped them near the smoke shop. *Id.* ¶¶ 26, 29. Turner complied with the Officers' commands by stopping and walking towards the wall, but Henderson continued to walk toward the shop. *Id.* ¶¶ 30-34. Soriano approached Henderson, and Henderson turned toward Soriano, put his hands up, and while walking said, "Don't touch me. Do not touch me bro. I'm not doing shit, bro." *Id.* ¶ 35-36. While in the shop, Henderson still refused Soriano's command to "come here," and when asked what this was for, Soriano said he and Turner were detained for "drinking in public," but Henderson said he was "not drinking in public." *Id.* ¶¶ 39-42, 45. Soriano then said, "You're with [Turner]. Come here." *Id.* ¶ 43. And after Henderson asked again what this was for, Soriano said again, "You're with [Turner]. He has an open container. So come back over here." *Id.* ¶ 47. Henderson remained inside the shop, attempting to make a purchase. *Id.* ¶ 48. Soriano and other officers then entered the shop and handcuffed Henderson. *Id.* ¶ 49. Soriano later told his supervisor that the basis for the detention was "for pending a drinking in public because they both had access to it." *Id.* ¶ 51. He said: "They were right there, and as soon as they saw us, they concealed it." *Id.* Soriano threw the beer can into the trash. *Id.* ¶ 52.

The arrest report states that the Officers "observed [Henderson and Turner] holding/sharing an open alcoholic container and attempting to conceal it under their shirt and with their persons (violation of 41.27(H) LAMC)." *Id.* ¶ 56. The Officers did not see Henderson holding the beer again after passing it to Turner. *Id.* ¶ 80. And other than seeing Henderson holding and passing the beer to Turner, there was no other basis to stop Henderson. *Id.* ¶ 67. Henderson was formally arrested for resisting, delaying, or obstructing an officer in the lawful performance of their duties in violation of California Penal Code Section 148(a). *Id.* ¶ 53. Henderson was released from jail approximately two hours later. *Id.* ¶ 58.

///

///

6

## V.    **Discussion**

Plaintiff moves for partial summary judgment contending that the undisputed facts support his claim for Unlawful Search and Seizure, 42 U.S.C. § 1983. For the reasons discussed below, the Court DENIES summary judgment.

The parties have one core dispute: whether the Officers observed Henderson holding a beer before the DICV started recording or not. *See* Motion at 20. If the Officers did observe Henderson holding a beer, then the Officers would have had reasonable suspicion to conduct an investigatory stop of Henderson for violation of Los Angeles Municipal Code Section 41.27(h), which makes it an infraction to possess an open alcoholic container in public with the intent to consume. *See id.* at 20, 25; *see also* Ex. D at 000049. And if there was reasonable suspicion to detain Henderson, then there was probable cause to arrest Henderson for resisting, delaying, or obstructing an officer in the lawful performance of their duties in violation of California Penal Code Section 148(a). *See* Motion at 35-37.[2]

**A.    Genuine Disputes of Material Fact Prevent the Court From Granting the Plaintiff Summary Judgment on the Unreasonable Seizure Claim for Conducting an Investigatory Stop of Henderson Without Reasonable Suspicion.**

Officers may conduct "brief investigatory stops" without violating the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "Reasonable suspicion is defined as a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (internal quotations omitted). Reasonable suspicion is a "commonsense, nontechnical conception[ ] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and

---

[2] In its Joint Supplemental Briefing, Henderson argues that *People v. Duran*, 52 Cal. Rptr. 2d 79 (Cal. App. Dep't Super. Ct. 1995) held that Section 41.27(h) was unconstitutional. *Id.*; *see also* Dkt. No. 21 at 1. And because the Officers stopped Henderson for possessing an open container, in violation of Section 41.27(h), and it is undisputed that they did not see Henderson drinking a beer, then there was no reasonable suspicion to detain Henderson. *See* Dkt. No. 21 at 1-2. However, *Duran* is a non-binding decision on the Court. *See* Dkt. No. 21 at 2. The Court is unaware of any binding authority holding Section 41.27(h) unconstitutional. Therefore, the Court will assess the parties' arguments below.

prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quoting *Illinois v. Gates*, 462, U.S. 213, 231 (1983)).

Henderson argues that the Officers' testimony that Henderson was holding a beer in the five seconds *before* the DICV started recording is "blatantly contradict[ed]" by the BWV, because the Officers "weren't even looking up and toward their one-to-two o-clock position, let along maintaining a constant visual of [Henderson]." Motion at 23, 34. Henderson also argues that when the DICV started recording, the DICV footage "clearly depicts" Henderson walking in the Officers' view and not holding a beer in that moment. *See id.* Defendants argue that the video evidence "does not 'blatantly' contradict the Officers' version." *See id.* at 30.

> i.   There is a genuine issue of material fact as to whether Henderson was holding a beer in the five seconds before the DICV started recording.

First, the Court finds that the BWV does not "blatantly contradict[]" the Officers' testimony that they saw Henderson holding a beer can five seconds before the DICV started recording, creating a genuine issue of material fact. "When opposing parties tell two different stories, one of which is *blatantly contradicted by the record* [that is depicted by the video], so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added).

Here, Defendants testified that they saw Henderson holding a beer can in his hand "approximately five seconds" before the DICV video started and in those five seconds, Henderson had already passed the beer to Turner. *See* Munoz Dep. 32:16-33:2, Dkt. No. 20-10; Soriano Dep. 22:4-20, 49:15-50:4, Dkt. No. 20-9. Defendants also testified that in the "entire time span" from the approximate five seconds before the DICV video started recording to the six seconds after, the Officers had "maintained a visual on the suspects." *See* Munoz Dep. 35:12-37:3. The DICV started recording at 22:13:54, and Henderson and Turner were seen on the DICV from 22:13:54 to 22:14:00, a total of six seconds. *See* Ex. C.

The Officers' testimony is not "blatantly contradicted" by the record as to either Officer Munoz or Officer Soriano. First, for Officer Munoz, it is unclear what Munoz is looking at in the five seconds before and six seconds after the DICV started recording (22:13:49-14:00). *See* Motion

8

at 30. It is not clear that Munoz was—as Henderson asserts—"actively on his phone" for the entire first five seconds, Motion at 23, because the video only shows him using his phone beginning at 22:13:51, two seconds into the five-second period. *See* Ex. B at 1:07-1:13. And in the six seconds after, it appears Munoz continued using his phone. *See id.* at 1:13-1:19. But, even reviewing the entire video recording from 22:13:49 to 22:14:00, the video cannot show where Munoz's eyes were trained. A person can obviously be using their phone without looking at it, especially when a person is only using the phone to tap the Shazam app and is coming to a stop at a red light, which is depicted in the video. So it cannot be said conclusively that Munoz did not have a visual on Henderson the "entire time span." Therefore, when viewing the facts in the light most favorable to Defendants, a reasonable jury could find that Munoz saw Henderson holding a beer before the DICV recorded.

Second, as to Officer Soriano, in the five seconds before, it appears that Soriano's head was moving back and forth—looking at Munoz, outward to the street, and inward at the car—in the five-second period. *See* Ex. B at 1:07-1:13. And in the six seconds after, it appears Soriano looked inward at the car for half the time and then outward onto the street for the second half. *See id.* at 1:13-1:19. While the video does "blatantly contradict" that Soriano had a visual on Henderson for the "entire time span," the video does not "blatantly contradict" that Soriano saw Henderson in the five seconds before since his head was on a swivel looking inward and outward. Therefore, when viewing the facts favorably to Defendants, a reasonable jury could still find that Soriano saw Henderson holding a beer before the DICV started recording.

Furthermore, the Court finds it is undisputed that Henderson was not holding a beer in the DICV video, *see* Ex. C at 0:00-0:05, because Soriano testified that Henderson was holding a twenty-four ounce beer in his right hand, and the video clearly depicts that Henderson's right hand is in his sweatshirt during that entire time and not holding anything, *see id.*; Soriano Dep. 13:23-14:24, 52:24-53:8, 54:8-17. And it is undisputed that the Officers never saw Henderson drinking a beer. *See* JAF ¶ 19. But this is immaterial to the ultimate question of whether there is a genuine dispute, because the key dispute is whether Henderson was holding the beer *before* the DICV recorded and

then transferred it to Turner by the time the DICV started recording, *see* Ex. A at 11:22-28, which as discussed above is in dispute, *see* Motion at 24, 30.[3]

Accordingly, there is a genuine dispute of a material fact as to whether Henderson was holding a beer to give the Officers reasonable suspicion to stop him.

### B. Defendants are Not Entitled to Qualified Immunity for the Investigatory Stop of Henderson.

Defendants argue that the Officers are entitled to qualified immunity because Henderson only argues "in a broad sense that the Officers violated clearly established law," and Henderson has not "presented any authority that shows that the alleged unconstitutionality of Defendants' conduct was beyond debate at the time of [the] incident." *See* Motion at 31-34. The Court finds that the law was clearly established regarding an investigatory stop without reasonable suspicion.

To determine whether an official is entitled to qualified immunity, the court asks "(1) whether the [official's] conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the events at issue." *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022) (quoting *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022)). Courts have the discretion to address the two-step inquiry in the order they deem most suitable under the circumstances and may address directly whether the right at issue was clearly established rather than first determining whether an actual constitutional violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The facts are viewed in a light most favorable to the injured party. *See Chappell v. Mandeville*, 706 F.3d 1052, 1057 (9th Cir. 2013). Defendants are "only entitled to qualified immunity as a matter of law if, taking the light most favorable to [Plaintiff], they violated no clearly established constitutional right." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008) (citing *Hunter v. Bryant*, 502 U.S. 224, (1991)).

---

[3] Even though Turner said he was the only one with a beer in his hand, *see* Ex. J at 8:00-20, that does not make it clear and "blatantly contradict" the record as to whether the Officers saw Henderson with a beer before the DICV started recording, *see* Motion at 24. Rather, this would create a question of fact as to the credibility of Turner and the Officers on this issue, which is appropriate for a jury to resolve.

A right is clearly established for purposes of qualified immunity only where "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dunn v. Castro*, 621 F.3d 1196, 1200 (9th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). For a constitutional right to be clearly established, a court must define the right at issue with "specificity" and "not . . . 'at a high level of generality.'" *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). A clearly established right cannot merely be implied by precedent, and plaintiffs may not defeat qualified immunity by describing violations of clearly established general or abstract rights outside "an obvious case." *White v. Pauly*, 580 U.S. 73, 79, 80 (2017) (internal quotation marks and citations omitted). While the clearly established law must be "particularized" to the facts of the case, *id.* at 79, a plaintiff need not point to circumstances where "the very action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640; *see also Perez v. City of Fresno*, 98 F.4th 919, 924 (9th Cir. 2024) ("Although there need not be a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate.") (internal quotation marks and citations omitted). In fact, "officials can still be on notice that their conduct violates clearly established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Thus, the question is not whether an earlier case mirrors the specific facts here. Rather, the relevant question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013) (citation omitted).

The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017). "[S]ummary judgment in favor of [the] moving [party] is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits." *Est. of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1021 (9th Cir. 2017) (internal citations omitted).

Here, because the Court has already explained that there is a genuine issue of material fact concerning the Officers' violation of allegedly stopping Henderson without reasonable suspicion, the Court examines whether the right was clearly established. The Court finds that at the time of Henderson's investigatory stop, it was clearly established that an officer cannot execute a stop unless

the officer has reasonable suspicion to do so. *See Sialoi v. City of San Diego*, 823 F.3d 1223, 1237 (9th Cir. 2016) ("[I]t has long been clearly established that it is unlawful to conduct an investigatory stop and search unsupported by reasonable suspicion."); *see also Morgan v. Woessner*, 997 F.2d 1244, 1259 (9th Cir. 1993). This is an "obvious case," where it was a violation of a clearly established right, because Munoz's and Soriano's alleged conduct, when viewing the facts in the light most favorably to Henderson, is "a run-of-the-mill Fourth Amendment violation." *See White*, 580 U.S. at 80. Therefore, Munoz and Soriano had "fair warning" that stopping Henderson without knowing whether he was holding a beer can or not was unconstitutional.

To the extent Defendants contest these facts to argue the reasonableness of Henderson's seizure and rebut this clearly established law, summary judgment is not proper. The "answer to that [reasonableness of the stop] question depends on disputed issues of material fact … best resolved by a jury." *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir. 2003). Thus, "the [O]fficers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, . . . [making] summary judgment [] not appropriate." *Id.* at 956.

Accordingly, Defendants are not entitled to qualified immunity.[4]

C. **Genuine Disputes of Material Fact Prevent the Court From Granting the Plaintiff Summary Judgment on the Unreasonable Seizure Claim for Arresting Henderson Without Probable Cause.**

Henderson was arrested for resisting, delaying, or obstructing an officer in the lawful performance of their duties, in violation of California Penal Code Section 148(a). *See* Motion at 35-37; Ex. D at 000049. Henderson argues that if it can be established that the Officers unlawfully

---

[4] The Court need not address the other stated bases for why the law was clearly established, *see* Motion at 26-28, because as discussed above, the basis for the stop was because Henderson was allegedly holding a beer, and Officers did not have reasonable suspicion to stop Henderson, when viewing the facts in the injured party's favor.

Furthermore, Munoz's and Soriano's knowledge that if they did not observe Henderson holding a beer, then they would not have had reasonable suspicion to detain him in violation of his Fourth Amendment rights, *see* Munoz Dep. 21:22-22:25, 25:22-26:20; Soriano Dep. 35:25-39:4, 47:2-14, does not make the law clearly established, because a "defendant's 'subjective understanding of the constitutionality of his or her conduct is irrelevant.'" *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (quoting *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008)).

stopped him, then as a matter of law, the arrest for failing to comply was unlawful and clearly established. *See* Motion at 36. Defendants argue that the initial detainment was lawful, so they had probable cause to arrest Henderson for violating Section 148(a). *See id.* at 37. Defendants also repeat the same qualified immunity argument as above. *See id.*

It is clearly established that "to be properly arrested for obstruction under Section 148 of the California Penal Code, the [Officers] must have been acting lawfully prior to the obstruction." *See Bernal v. Sacramento Cnty. Sheriff's Dep't*, 73 F.4th 678, 694 (9th Cir. 2023); *see e.g., Velazquez v. City of Long Beach*, 793 F.3d 1010, 1019 (9th Cir. 2015) (quoting *Garcia v. Superior Ct.*, 99 Cal. Rptr. 3d 488, 500 (Cal. Ct. App. 2009) (noting that for the purposes of Section 148(a), "an officer is not lawfully performing her duties when she detains an individual without reasonable suspicion or arrests an individual without probable cause"); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1178 (9th Cir. 2013) (holding a "suspect cannot be arrested for violating Section 148 because he evaded an officer's attempt to arrest him unlawfully"); *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007).

Here, because there is a question of fact as to whether the Officers had reasonable suspicion to detain Henderson and were thus acting lawfully at the time of Henderson's arrest, there is then a question of fact as to whether the arrest in violation of Section 148(a) was lawful. Accordingly, summary judgment is improper on this issue.

## CONCLUSION

In light of the foregoing, the Court hereby ORDERS as follows:

1. The Court's Findings of Fact are ESTABLISHED for trial;

2. The Motion for Partial Summary Judgment (Dkt. No. 20) is DENIED; and

3. The parties are reminded of the upcoming deadlines in the Civil Trial Order, Dkt. No. 17.

IT IS SO ORDERED.

Dated: March 16, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge